Filed 11/8/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br> A.C.,<br><br>    Defendant and Appellant. | F084030<br><br>(Super. Ct. No. JD141035-00)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

A.C. (Mother) is the mother of E.C., now three years old. In 2020, E.C. was taken into protective custody after Mother's domestic violence related arrest, and, in 2021, she was made a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] Mother timely appeals the juvenile court's order terminating her parental rights under section 366.26.[2] E.C.'s alleged father, Ed. C., is not a party to the appeal.

Mother's sole claim on appeal is that Kern County Department of Human Services (the Department) failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law with respect to its duty of "further inquiry," which was triggered by information that maternal great-grandmother and two maternal great-uncles were enrolled members of the Apache tribe.[3] (§ 224.2, subd. (e)(1).)[4] The Department does not dispute that it had a duty of further inquiry in this case or that it failed to document its inquiry in the record. However, it requests that, one, we consider postjudgment evidence under Code of Civil Procedure section 909, in the form of declarations setting forth information that Department paralegals obtained from maternal grandmother, maternal aunt, and someone associated with the Lipan Apache Band of Texas, and, two, we take judicial notice of the list in the Federal Register of recognized tribal entities, which does not include the Lipan Apache Band of Texas. In

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.), effective January 1, 2023, but the amendment is not relevant to the issue raised on appeal.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[4] Although not relevant to the issues raised in this case, section 224.2, subdivision (k), was amended, effective January 1, 2023, to provide for telephonic or other remote means of participation by an Indian child's tribe. (Assem. Bill No. 2960 (2021–2022 Reg. Sess.).)

light of this evidence, the Department contends the juvenile court's finding that ICWA does not apply is supported by substantial evidence and any error is harmless.

The juvenile court record in this case is silent as to what inquiry the Department conducted under ICWA and what responses, if any, it received. Therefore, as the Department concedes, its inquiry fell short of what is required under California law. (§ 224.2, subds. (b), (e).) As discussed, the deficiencies include failing to conduct a further inquiry into the information that maternal great-grandmother and two maternal great-uncles may be enrolled members of the Apache tribe.[5] (§ 224.2, subd. (e).) In addition, the Department failed to document its ICWA inquiry, and any results, in the record. (Cal. Rules of Court, rule 5.481(a)(5).)[6] Given this bare record, the juvenile court's implied finding of a proper, adequate, and duly diligent inquiry is unsupported by substantial evidence and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2); *In re K.H.* (Oct. 21, 2022, F084002) __ Cal.App.5th __, __ [2022 Cal.App. Lexis 880, *5–6] (*K.H.*) [adopting hybrid standard].)

We deny the Department's motion to submit postjudgment evidence because this routine case does not present "*exceptional circumstances*" justifying our engagement in findings of fact on review. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 (*Zeth S.*); accord, Code Civ. Proc., § 909; rule 8.252(b)–(c).) The evidence is also limited to declarations setting forth facts subject to dispute by Mother. However, even if we were to consider the evidence and treat it as undisputed for the sake of argument, it neither cures the error stemming from the Department's failure to conduct an adequate inquiry into Mother's claim that she has three relatives with membership in the Apache tribe, nor supplies

---

[5]     A parent within the meaning of ICWA does not include an "unwed father where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9); accord, *In re S.H.* (2022) 82 Cal.App.5th 166, 171.) Ed. C. never sought to elevate his paternity status and denied paternity when contacted by the Department. Therefore, we are concerned only with ICWA compliance on E.C.'s maternal side.

[6]     All further references to rules are to the California Rules of Court.

substantial evidence to support the juvenile court's ICWA finding. (§ 224.2, subds. (e), (i)(2).) At best, the evidence, which consists of two paralegals' and Department counsel's recently executed declarations, creates a conflict between Mother's testimony and information the Department obtained from maternal grandmother and maternal aunt involving a different relative. This factual conflict must be resolved by the juvenile court in the first instance.

As explained in our recent decision in *K.H.*, ascertaining whether an error in the context of ICWA and related California law is prejudicial requires viewing the error through the lens of ICWA's remedial purpose. (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *2], citing *In re A.R.* (2021) 11 Cal.5th 234, 252–254 (*A.R.*).) These laws are intended to ensure the rights of Indian children and Indian tribes are protected in dependency proceedings by giving tribes concurrent jurisdiction and the right to intervene when the proceeding involves an Indian child. (*In re W.B.* (2012) 55 Cal.4th 30, 48 (*W.B.*), citing 25 U.S.C. § 1911(b)–(c) & *Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 36 (*Holyfield*).) Many cases do not proceed beyond the inquiry stage in the ICWA compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the tribes' right to notice in proceedings that may involve an Indian child is to be meaningfully safeguarded, as was intended by Congress and our state Legislature. (*K.H., supra*, at p. __ [2022 Cal.App. Lexis 880, *9], citing *A.R., supra*, at pp. 252–253.)

As in *K.H.*, the error here is prejudicial because neither the Department nor the juvenile court gathered information sufficient to ensure a reliable ICWA finding by the court, and remand for an adequate inquiry that includes addressing the lead Mother provided regarding tribal enrollment of three relatives is necessary. (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *9–10].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion.

## I.  Petition and Detention

On June 1, 2020, E.C., then seven months old, was taken into protective custody by the Kern County Sheriff's Department following Mother's arrest at their home for committing acts of domestic violence against a visiting ex-girlfriend.  On June 2, 2020, the Department filed an original petition on behalf of E.C. alleging she came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect), (g) (no provision for support), and (j) (abuse of siblings).  The petition identified Ed. C. as E.C.'s alleged father, whereabouts unknown.  The Department's social study submitted with the petition set forth Mother's lengthy prior criminal and child protective services history, and documented Mother's disclosure that she may have Apache ancestry.

On June 3, 2020, the juvenile court held a detention hearing.  Mother, who was in custody, denied the allegations, submitted on detention, and testified regarding paternity and ICWA.  Mother identified Ed. C. as E.C.'s father, but testified he was not listed on the birth certificate and had not met E.C. because he was arrested when Mother was six months pregnant and subsequently deported to Mexico.  Mother testified she had regular contact with Ed. C. via video chat.

On the date of the hearing, Mother completed a "PARENTAL NOTIFICATION OF INDIAN STATUS" form (Judicial Council form ICWA-020 (ICWA-020)) indicating she may have Apache ancestry on her maternal side, and she identified I.C. in Bakersfield (maternal grandmother) on the form.  She also testified that maternal great-grandmother Er. C. and maternal great-uncles P.C. and Ern. C. were enrolled members of the Apache tribe; they received support through the tribe; and P.C. lived with Er. C.  Mother provided cross streets where Er. C. lived in Bakersfield and stated I.C. had Er. C.'s telephone

---

**7**     The sole issue on appeal is Mother's ICWA claim.  Therefore, we confine the facts to those relevant to that issue or helpful for clarity.

number. She also testified that I.C. was not an enrolled member of the tribe as far as she was aware.

The court found a prima facie showing that E.C. came within section 300 and ordered her detained from Mother. The court directed the Department to conduct an ICWA inquiry.

On August 4, 2020, the court granted the Department's motion to dismiss the section 300, subdivision (g), allegation, without prejudice.

## II. Jurisdiction and Disposition

On February 4, 2021, the juvenile court held a combined contested jurisdiction and disposition hearing. In its jurisdiction and disposition social studies, filed February 4, 2021, the Department recommended the court sustain the petition allegations and adjudge E.C. a dependent, remove her from Mother's physical custody, bypass Mother for reunification services under section 361.5, former subdivision (b)(10),[8] and set a selection and implementation hearing under section 366.26. With respect to ICWA, both social studies reflected an inquiry submitted on behalf of Mother was still pending and no new information had been provided. The disposition social study also reflected that Ed. C. was reached by telephone, he reported he was living in Mexico, and he denied paternity.

At the hearing, the Department's counsel stated with respect to ICWA, "I am submitting on that report, but I also wanted—and I know the father, at this point, is still alleged, but if the Court wants information, there was an inquiry into the family members done, and it was determined that the tribe that there was some family history and was not a federally recognized Apache tribe, and further that it was on a relative by marriage, not by blood."

---

[8]   The relevant subdivision is now (b)(10)(A) of section 361.5. (Stats. 2021, ch. 585, § 2, pp. 7–8.)

Mother objected to jurisdiction and requested services be provided. Mother's counsel accepted the ICWA representation, as did counsel for Ed. C. and for E.C.

The juvenile court sustained the allegations under section 300, subdivisions (b)(1) and (j), declared E.C. a dependent of the court, and ordered her removed from Mother's physical custody under section 361, subdivision (c)(1). The court ordered reunification services for Mother for six months, including counseling and drug testing, found no reason to believe E.C. is an Indian child, and found ICWA did not apply.

On September 13, 2021, the court held a combined 6- and 12-month review hearing. The Department's social studies stated Mother's progress was minimal, and recommended services be terminated and the court set a selection and implementation hearing under section 366.26. The social studies reflected no new ICWA information. Mother was not present, and her counsel objected but offered no argument or evidence.

The court found minimal progress by Mother, terminated family reunification services, and set a section 366.26 hearing.

On January 11, 2022, the court held a section 366.26 hearing. The Department's social study reflected that E.C.'s Resource Family Home caregiver, with whom she was placed after being taken into protective custody on June 1, 2020, desired to adopt her. The Department recommended the court terminate Mother's and Ed. C.'s parental rights and select a permanent plan of adoption for E.C.

Mother's counsel objected, but offered no argument or evidence.

The court found no new information regarding ICWA, and Mother and her counsel stated they had no new information to share. The court terminated Mother's and Ed. C.'s parental rights and selected a permanent plan of adoption for E.C.

Mother's counsel filed a timely notice of appeal.

## DISCUSSION

### I.    ICWA

#### A.    Background

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation" (*W.B., supra*, 55 Cal.4th at p. 48, fn. omitted, citing 25 U.S.C. § 1911(b)–(c) & *Holyfield, supra*, 490 U.S. at p. 36), furthering "federal policy '"that, where possible, an Indian child should remain in the Indian community"'" (*W.B., supra*, at p. 48, quoting *Holyfield, supra*, at p. 37).[9]  "ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families" (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210; accord, *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421), and "[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding" (*In re K.T.* (2022) 76 Cal.App.5th 732, 741, citing 25 U.S.C. § 1911; accord, *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*).)

"In 2006, California adopted various procedural and substantive provisions of ICWA." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*), citing *In re Autumn K.* (2013) 221 Cal.App.4th 674, 703–704; accord, *W.B., supra*, 55 Cal.4th at p. 52; *In re T.G.* (2020) 58 Cal.App.5th 275, 290 (*T.G.*).)  The Legislature's "primary objective … was to *increase* compliance with ICWA.  California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of

---

[9]    As stated in *K.H.*, "[o]n February 28, 2022, the United States Supreme Court granted petitions for writ of certiorari in cases Nos. 21-376, 21-377, 21-378, and 21-380, and consolidated the cases in *Brackeen v. Haaland* (Feb. 28, 2022, No. 21-376) __ U.S. __ ([142 S.Ct. 1205]).  The case presents numerous constitutional challenges to ICWA.  Oral argument is scheduled for November 9, 2022." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *15, fn. 8].)

[ICWA's] requirements into state law would help alleviate the problem. (Sen. Judiciary Com., Analysis of Sen. Bill No. 678 (2005–2006 Reg. Sess.) as amended Aug. 22, 2005, p. 6.)" (*W.B., supra*, at p. 52, italics added; accord, *In re Michael V.* (2016) 3 Cal.App.5th 225, 231–232, fn. 4.)

"In 2016, new federal regulations were adopted concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019).) Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. (Assem. Bill No. 3176 (2017–2018 Reg. Sess.); *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3.) Those changes became effective January 1, 2019 …." (*D.S., supra*, 46 Cal.App.5th at p. 1048, fn. omitted.) Subsequently, the Legislature amended section 224.2, subdivision (e), to define "'reason to believe,'" effective September 18, 2020. (*T.G., supra*, 58 Cal.App.5th at p. 290, fn. 14, citing Assem. Bill No. 2944 (2019–2020 Reg. Sess.) ch. 104, § 15, pp. 24–25.)" (*K.H., supra,* __ Cal.App.5th at p. __, fn. omitted [2022 Cal.App. Lexis 880, *17].)

## B.     Summary of Duties of Inquiry and Notice

Federal and state law define an "'Indian child' [as] any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe …." (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a).) Further, state law provides, "As used in connection with an Indian child custody proceeding, the term 'Indian child' also means an unmarried person who is 18 years of age or over, but under 21 years of age, who is a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe, and who is under the jurisdiction of the dependency court, unless that person or their attorney elects not to be considered an Indian child for purposes of the Indian child custody proceeding. All Indian child custody proceedings involving persons 18 years of age and older shall be

conducted in a manner that respects the person's status as a legal adult." (§ 224.1, subd. (b).)

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *18], citing *T.G., supra*, 58 Cal.App.5th at p. 294; accord, *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321, fn. 8 (*Rylei S.*).) "'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.'" (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Under state law, "[j]uvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a child for whom a section 300 petition has been filed is or may be an Indian child." (*In re N.G.* (2018) 27 Cal.App.5th 474, 481 (*N.G.*), quoting § 224.3, former subd. (a); accord, *T.G., supra*, at p. 290; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) "As many courts have recognized, '[t]he ICWA investigatory process under state law is now expansive and potentially onerous.'" (*K.H.*, at p. __ [2022 Cal.App. Lexis 880, *19], quoting *In re S.H., supra*, 82 Cal.App.5th at p. 174.)

"The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G., supra*, 58 Cal.App.5th at p. 290.) ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); [Welf. & Inst. Code,] § 224.3, subd. (a).) Notice enables the tribes to 'determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' (*In re T.G., supra*, 58 Cal.App.5th at p. 288.)" (*Ricky R., supra*, 82 Cal.App.5th at p. 678.)[10]

---

[10] "Courts have recognized it is somewhat inaccurate to refer to the agency's ""'initial duty of inquiry'"" (*Rylei S., supra*, 81 Cal.App.5th at p. 319) because the duty '"begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings' ([*In re*] *J.C.*

"The duty of initial inquiry applies in every dependency proceeding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 88[3]–88[4] (*Austin J.*).) Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).) In addition, when [it] takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); [Welf. & Inst. Code,] § 224.1, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. (§ 224.2, subd. (e), 1st par.) '[R]eason to believe' exists whenever the court or [the agency] has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)–(C).)

---

[2022)] 77 Cal.App.5th [70,] 77)." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *19, fn. 10].) As the focus of this appeal is the Department's failure to discharge its duty of further inquiry under section 224.2, subdivision (e), we may refer to the Department's duty under section 224.2, subdivision (b), as the duty of initial inquiry to the extent necessary for clarity.

"The duty to provide notice arises only if [the agency] or the court 'knows or has reason to know that an Indian child is involved.' (25 U.S.C. § 1912(a); see [Welf. & Inst. Code,] § 224.3, subd. (a); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884.) Federal regulations define the grounds for reason to know that an Indian child is involved. (25 C.F.R. § 23.107(c)(1)–(6) (2022).) State law conforms to that definition. (§ 224.2, subd. (d)(1)–(6).)" (*Ricky R., supra*, 82 Cal.App.5th at pp. 678–679.)

## II. Error Arising From Failure to Conduct and Document Further Inquiry

### A. Statutory Duties of Department and Court

As discussed, from initial contact, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 … may be or has been filed, is or may be an Indian child.…" (§ 224.2, subd. (a).) "[A]t the first appearance in court of each party, the juvenile court has a duty to 'ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'" (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *21], quoting § 224.2, subd. (c).)

Further, the Department has a broad duty of initial inquiry as follow: "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224, subd. (b).) "'[E]xtended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has

12.

reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].)

If the court or the Department "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e), italics added.) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.…" (*Id.,* subd. (e)(1).)

Effective January 1, 2020, the California Rules of Court require the Department to, "on an ongoing basis[,] include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes." (Rule 5.481(a)(5).) After the duty of inquiry has been discharged, the juvenile court may make a finding that ICWA does not apply, if it finds "that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child .…" (§ 224.2, subd. (i)(2).)

13.

### B. Standard of Review

As recently set forth in *K.H.*, "[t]he juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' (§ 224.2, subd. (i)(2).) The court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply. (§ 224.2, subd. (i)(2).) This inquiry is essentially factual and, therefore, is reviewed for substantial evidence. ([*In re*] *Ezequiel G.* [(2022)] 81 Cal.App.5th [984,] 1004, citing [*In re*] *Caden C.* [(2021)] 11 Cal.5th [614,] 639–640; accord, *In re J.K.* (2022) 83 Cal.App.5th 498, 504; *D.S., supra*, 46 Cal.App.5th at p. 1051.) Under this standard, 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence."' ([*In re*] *Caden C., supra*, at p. 640; accord, [*In re*] Ezequiel *G., supra*, at p. 1004.) The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 883), and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' (*ibid.*). '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' (*Ibid.*)

"The juvenile court must also find a 'proper and adequate further inquiry and due diligence ….' (§ 224.2, subd. (i)(2).) While we review the court's factual findings on the second element for substantial evidence as well, we agree with [*In re*] *Ezequiel G.* that, consistent with the reasoning in [*In re*] *Caden C.*, a hybrid standard of review is appropriate. ([*In re*] *Ezequiel G., supra*, 81 Cal.App.5th at pp. 1004–1005.) The inquiry is ultimately discretionary because it requires the juvenile court to 'engage in a delicate

balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence. ([*In re*] *Caden C., supra*, 11 Cal.5th at p. 640; accord, [*In re*] *Ezequiel G., supra*, at pp. 1004–1005.)

"'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ""'"the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."'"" [Citation.] But ""'"[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court"'"" [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' ([*In* re] *Caden C., supra*, 11 Cal.5th at p. 641.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but '"[a]n appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law."' (*People v. Vivar* (2021) 11 Cal.5th 510, 527, quoting *In re George T.* (2004) 33 Cal.4th 620, 634.) Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied. (*In re J.K., supra*, 83 Cal.App.5th at p. 504, citing *In re J.L.* (2017) 10 Cal.App.5th 913, 918; accord, *D.S., supra*, 46 Cal.App.5th at p. 1051; *In re Michael V., supra*, 3 Cal.App.5th at p. 235, fn. 5; *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; see *People v. Ault* (2004) 33 Cal.4th 1250, 1266 ['[I]ndependent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the *final determination* of a party's rights, either as to the entire case, or on a significant issue in the litigation.'].) In this case, because we are confronted with an undeveloped record, the

outcome is the same irrespective of the standards of review applied." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *26–28].)

### C. Analysis

#### 1. Case-specific Facts Relating to ICWA

At the outset of this dependency proceeding, Mother was interviewed by a social worker and reported possible Apache ancestry. At the detention hearing held two days later, Mother filled out an ICWA-020 form stating she is or may be eligible for membership in the Apache tribe through her maternal side and she identified her mother, I.C. of Bakersfield. At the hearing, Mother testified that maternal great-grandmother (Er. C.) and two maternal great-uncles (P.C. and Ern. C.) were enrolled members of the Apache tribe. She identified these three relatives by name, testified one of the two great-uncles lived with great-grandmother and maternal grandmother had maternal great-grandmother's phone number, and identified the cross streets where maternal great-grandmother lived in Bakersfield.

In its disposition social study, the Department reported Mother's statement that she may have possible Apache ancestry through maternal grandmother and reported that an inquiry had been submitted on Mother's behalf. The social study reflected there were inquiries pending and no new information had been provided. The jurisdiction social study reflected the same information.

As previously summarized, at the combined jurisdiction and disposition hearing, the Department's counsel stated, "I know *the father*, at this point, is still alleged, but if the Court wants information, there was an inquiry into the family members done, and it was determined that the tribe that there was some family history and was not a federally recognized Apache tribe, and further that it was on a relative by marriage, not by blood." (Italics added.) Counsel for Mother, Ed. C., and E.C. did not object to this representation or question whether counsel meant an inquiry of *Mother*'s family was conducted. No further details were provided, and no information was documented in the Department's

16.

social studies or elsewhere in the juvenile court record; and the court did not inquire further during the hearing about the Mother's prior testimony or the information she provided on her ICWA-020 form. The court concluded there was no reason to believe that E.C. was an Indian child and found ICWA did not apply.

### 2. Reason to Believe E.C. an Indian Child

#### a. Summary of Parties' Positions

Mother argues that given her testimony that maternal great-grandmother and two maternal great-uncles were enrolled members of the Apache tribe, the Department failed to fulfill its duty of further inquiry under section 224.2, subdivision (e). She urges us to reject the narrow minority viewpoint expressed in *Austin J.*, discussed below, and contends that the juvenile court's ICWA finding should be set aside and this matter remanded for further inquiry. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 887–890 (*Austin J.*).)

The Department does not directly address Mother's argument concerning the threshold that must be met to trigger a further inquiry. Instead, the Department concedes that information pertaining to its ICWA inquiry was not set forth in its social studies and that the juvenile court's ICWA finding was based on counsel's verbal representation mentioning father during the combined jurisdiction and disposition hearing. However, the Department contends that any error in accepting counsel's representation was harmless because an appropriate inquiry was conducted and that if we accept its proffer of postjudgment evidence, the juvenile court's finding is supported by substantial evidence and should be affirmed.[11]

---

[11] The Department relies on Code of Civil Procedure section 909, which provides, "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the

17.

### b. Claim of Apache Ancestry Required Further Inquiry

As we recognized in *K.H.*, agencies now have a broader duty of inquiry and a duty of documentation following changes in California law over the past few years. (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *3], citing § 224.2, subd. (b) & rule 5.481(a)(5).) At issue in *Austin J.* was the amendment of section 224.2 under Assembly Bill No. 3176 (2017–2018 Reg. Sess.), effective January 1, 2019. (*Austin J., supra*, 47 Cal.App.5th at pp. 884–885.) With respect to the duty of further inquiry, the court opined that "[i]nformation about a tribal connection that 'is too vague, attenuated and speculative' will not support a 'reason to believe the children might be Indian children.'" (*Id.* at p. 888, quoting *In re J.D.* (2010) 189 Cal.App.4th 118, 125.) The court concluded, "Mother's statement that she 'may have Indian ancestry' and had been 'told that [her] mother had Cherokee [ancestry],' and the similar statement by Mother's aunt that she 'may have had Cherokee heritage,' are insufficient to support a reason to believe the children are Indian children as defined in ICWA. At most, they suggest a mere possibility of Indian ancestry. Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member." (*Austin J., supra*, at p. 888, citing 25 U.S.C. § 1903(4), Welf. & Inst. Code, § 224.1, subd. (a) & *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1520.)

However, as the Court of Appeal explained in *T.G.*, even prior to the passage of Assembly Bill No. 3176 (2017–2018 Reg. Sess.), *Austin J.*'s "insistence a parent's express statement of Indian ancestry does not constitute a reason to believe an Indian child may be involved is fundamentally at odds with well-established ICWA law. To be

decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

sure, an 'Indian child' is defined in terms of tribal membership, not ancestry. But the question of membership is determined by the tribes, not the courts or child protective agencies. [Citations.] That determination often requires providing a tribe with extensive biographical data (that is, information about ancestors and ancestry), which is why section 224.3, subdivision (a)(5)(C), prescribes in detail the information about parents, grandparents and great-grandparents that must be included in an ICWA notice." (*T.G., supra*, 58 Cal.App.5th at p. 294, fn. omitted.)

"[T]he imposition of a duty to inquire that is significantly more expansive than the duty to provide ICWA notice is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers like Los Angeles, may well have lost the ability to convey accurate information regarding their tribal status. As a result, the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes. [Citation.] General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. [Citation.] Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry." (*T.G., supra*, 58 Cal.App.5th at p. 295, fn. omitted.) Therefore, the majority view is that a report of possible Indian ancestry, such as in this case, is sufficient to trigger the duty of further inquiry. (*Id.* at p. 292; accord, *Rylei S., supra*, 81 Cal.App.5th at p. 319; *In re M.E.* (2022) 79 Cal.App.5th 73, 83–84; *In re S.R.* (2021) 64 Cal.App.5th 303, 316–317; *D.S., supra*, 46 Cal.App.5th at p. 1052.)

Notably, *Austin J.*'s conclusion that possible Indian ancestry is insufficient to trigger the duty of further inquiry was not informed by the Legislature's amendment of section 224, subdivision (e), under Assembly Bill No. 2944 (2019–2020 Reg. Sess.), as

19.

that amendment postdated the decision in *Austin J.* Therefore, notwithstanding *Austin J.*'s otherwise narrow view, its opinion on this point has been undermined by subsequent legislative action. (*In re I.F.* (2022) 77 Cal.App.5th 152, 163; accord, *In re S.R., supra*, 64 Cal.App.5th at p. 317; *In re M.E., supra*, 79 Cal.App.5th at p. 84.) The Department does not argue otherwise.

In this case, the juvenile court record reflects that Mother reported possible Apache ancestry on her maternal side through maternal grandmother, and she testified that maternal great-grandmother and two maternal great-uncles were enrolled members of the Apache tribe. The record also reflects that the Department had some contact with maternal aunt I.S. regarding placement and that maternal grandmother I.C., with whom one of Mother's older eight children was placed, had one visit with E.C. However, this record contains no documentation regarding to whom the Department may have directed ICWA inquiries and what responses, if any, were received.

We agree with Mother that the information provided on her ICWA-020 form and during her testimony demonstrated a "reason to believe" E.C. may be an Indian child, and the failure to conduct a further inquiry and document the results in the record was error. (§ 224.2, subd. (e); accord, rule 5.481(a)(4)–(5).) As a result of these errors, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence and the court abused its discretion in concluding otherwise. (§ 224.2, subd. (i)(2).)

### 3. Motion to Consider Postjudgment Evidence

The Department requests that we consider postjudgment evidence, pursuant to Code of Civil Procedure section 909, and argues that this evidence supplies substantial evidence to support the juvenile court's ICWA finding. As explained next, we deny the motion. However, even if we considered the evidence for the sake of argument, it would not alter the outcome in this case.

The evidence in question consists of three recently executed declarations. Two paralegals with the Department attested that in November 2020, they made ICWA

20.

inquires of maternal grandmother (I.C.) and maternal aunt (I.S.), both of whom indicated that the tribal connection was by marriage through an aunt and that it related to the Lipan Apache Band of Texas.  In addition, an individual with an unspecified connection to the tribe allegedly told one of the paralegals that the tribe is recognized by the state but not the federal government.  The third declaration is from the Department's trial counsel attesting that she received the aforementioned information prior to making her representation to the court at the combined jurisdiction and disposition hearing.

Some Courts of Appeal have approved receipt of postjudgment evidence to resolve claims of error under ICWA.  (E.g., *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779 & fn. 4, review granted Sept. 21, 2022, S275578; *In re Allison B.* (2022) 79 Cal.App.5th 214, 218–219 (*Allison B.*); *In re A.C.* (2021) 65 Cal.App.5th 1060, 1070–1071; see *In re Kenneth D.* (2022) 82 Cal.App.5th 1027, 1034–1035.)  Others have declined to do so. (E.g., *In re Y.M.* (2022) 82 Cal.App.5th 901, 913–915; *Ricky R., supra*, 82 Cal.App.5th at pp. 681–683; see *In re G.H.* (2022) 84 Cal.App.5th 15, 32–33; *In re M.B.* (2022) 80 Cal.App.5th 617, 627–628.)  Consistent with *Zeth S.* and as stated in *K.H.*, we generally disapprove of reliance on postjudgment evidence to resolve claims of error under ICWA. (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *48–49], citing *Zeth S., supra*, 31 Cal.4th at pp. 405–406.)  Nevertheless, because there may be occasional cases that present exceptions, we emphasize that the inquiry is fact specific.  (See *In re E.L.* (2022) 82 Cal.App.5th 597, 608 (*E.L.*) [finding circumstances warranted admission of ICWA-020 form and tribal letters to resolve ICWA claim on review].)[12]

---

[12]    In *E.L.*, the mother claimed error under ICWA and her ICWA form, although filled out, was not part of the record.  (*E.L., supra*, 82 Cal.App.5th at p. 607.)  At the request of the children's legal guardian, the appellate court considered the mother's completed ICWA form, which had been obtained from the mother's trial counsel, stating she is a member or may be eligible for membership in the Tohono O'odham Nation; and letters from that tribe stating the children are not members, obtained from the legal guardian's trial counsel.  (*Id.* at p. 608.)  The appellate court acknowledged the general prohibition against accepting postjudgment evidence, but found that an exception was warranted.  (*Ibid.*)  Given that the decision to consider evidence under Code of Civil Procedure section 909 is a fact-specific inquiry that must be viewed in

In *Zeth S.*, the California Supreme Court explained, "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court … that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law ….' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be ma*de.'" (*Zeth S., supra*, 31 Cal.4th at p. 405.)[13] "There is no blanket exception to the general rule for juvenile dependency appeals." (*Ibid.*)

"[C]laims of error under ICWA are not rare and will not typically present the type of exceptional circumstances warranting deviation from the general rule …." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *48], citing *In re Y.M., supra*, 82 Cal.App.5th at p. 913.) To the contrary, routinely accepting the submission of such evidence on review "invites 'the [very] deviat[ion] from settled rules on appeal' disapproved of in *Zeth S.*" (*K.H., supra*, at p. __ [2022 Cal.App. Lexis 880, *48], quoting *Zeth S., supra*, 31 Cal.4th at pp. 405–406; accord, *In re Y.M., supra*, at p. 913.) "Notably, one of the cases *Zeth S.* disapproved was *In re Jonathan M.*, in which the Court of Appeal

---

context of the case in which it is offered, and that the evidence considered in *E.L.* is not analogous to the declarations offered here, we express no view on the court's determination in that case. However, as discussed herein, it should be the *rare* case in which postjudgment evidence is considered. (*Zeth S., supra*, 31 Cal.4th at p. 405.)

**13** "Under current rules, rule 8.252 provides that '[a] party may move that the reviewing court make findings under Code of Civil Procedure section 909,' and 'may move that the reviewing court take evidence.' (Rule 8.252(b), (c)(1).)" (*K.H., supra*, __ Cal.App.5th at p. __, fn. 14 [2022 Cal.App. Lexis 880, *47, fn. 14].)

stated, "'This court *routinely* accepts evidence per Code of Civil Procedure section 909 in juvenile dependency cases to expedite just and final resolution for the benefit of the children involved.'" (*Zeth S., supra*, at p. 408, quoting *In re Jonathan M.* (1997) 53 Cal.App.4th 1234, 1236, fn. 2.)" (*K.H., supra*, at p. __ [2022 Cal.App. Lexis 880, *48].)

In this case, the Department does not claim its postjudgment evidence renders Mother's appeal moot. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 (*Josiah Z.*) [consideration of postjudgment evidence to resolve the appellants' motion to dismiss their appeal as moot would not contravene *Zeth S.*].)[14] Instead, the Department points out that unlike in *Zeth S.*, its evidence consists "of sworn declarations and matters that can be judicially noticed and readily verifi[ed] by the Court"; and it argues that the evidence would be admissible and relevant in the trial court, it is relevant on appeal, and its consideration would allow this court to affirm the trial court. While we recognize that the Department is seeking to shore up the juvenile court's judgment rather than undermine it (*Josiah Z., supra*, at p. 676), this distinction does not overcome the general proscription against routinely accepting postjudgment evidence to resolve issues raised on appeal, absent exceptional circumstances not present here (*Zeth S., supra*, 31 Cal.4th at p. 405). Furthermore, while the Department does not request that we take judicial

[14] We observe that *Allison B.* relies on *Josiah Z.* for support, stating, "When … postjudgment evidence is offered to an appellate court in support of a motion to dismiss a juvenile dependency appeal, it is 'routinely consider[ed]' because, if the motion is granted, it will have 'the beneficial consequence' of "'expedit[ing] the proceedings and promot[ing] the finality of the juvenile court's orders and judgment.'"" (*Allison B., supra*, 79 Cal.App.5th at p. 219, quoting *Josiah Z., supra*, 36 Cal.4th at p. 676.) In *Josiah Z.*, however, the appellants were the children, and at issue was *their* appellate counsel's interest in exploring dismissal of the appeal as moot based on the children's best interests. The court did not consider an attempt by an opposing party to secure dismissal of the appellant's appeal through the submission of postjudgment evidence. While our observation should not be interpreted as taking the position that use of Code of Civil Procedure section 909 is limited to a particular party, the court's discussion of the issue in *Josiah Z.*, including its articulation of policy principles and statement that "appellate courts routinely consider limited postjudgment evidence" should not be divorced from its specific context. (*Josiah Z., supra*, at p. 676.)

notice of the declarations, its request that we rely on the contents to resolve Mother's claim against her necessarily requires that we treat the factual assertions therein as undisputed, which we cannot do. (*Ricky R., supra*, 82 Cal.App.5th at p. 681 ["truth of the matters asserted in the declarations" not judicially noticeable]; *In re M.B., supra*, 80 Cal.App.5th at pp. 626–627 [hearsay statements in decisions and court files not judicially noticeable].) This type of factfinding is precisely what must occur in the juvenile court in the first instance (*Ricky R., supra*, at pp. 681–683), where additional and possibly competing evidence may be offered; and the court, on a more fully developed record, will assess weight and credibility as appropriate, and make its factual findings.

Moreover, even if we considered the evidence as requested, it would not alter the outcome in this appeal because the evidence pertains only to the Department's inquiry of maternal grandmother and maternal aunt. It does not remedy the Department's failure to conduct a further inquiry into information that maternal great-grandmother and two maternal great-uncles were enrolled members of the Apache tribe. At best, the declarations would provide *some* evidence that E.C. is not an Indian child, but on this record, the evidence offered is not definitive. To put a finer point on it, maternal grandmother's and maternal aunt's alleged statements to social workers that the Indian ancestry is through an aunt by marriage and involves a Texas tribe does not appear to speak to Mother's testimony that her great-grandmother and two great-uncles are enrolled members in an Apache tribe. Whether both sets of information are accurate, neither set is accurate, or they are reconcilable are not matters appropriate for resolution by this court on review.

Therefore, we deny the Department's motion to consider postjudgment evidence under Code of Civil Procedure section 909. This renders the Department's request for judicial notice of the Federal Register listing tribal entities moot and the request is denied on that ground.

**III.    Assessing Error for Prejudice**

    **A.    Miscarriage of Justice Requirement**

Having found the Department and the juvenile court erred, we turn to the issue of prejudice.  Where the deficiency lies with an agency's duty of inquiry "and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M., supra*, 70 Cal.App.5th at p. 742).  Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *37].)

"'[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' (*In re Richard E.* (1978) 21 Cal.3d 349, 354; accord, *People v. Johnson* (2022) 12 Cal.5th 544, 605–606; *In re S.O.* (2020) 48 Cal.App.5th 781, 786–787; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780; *In re N.V.* (2010) 189 Cal.App.4th 25, 31), and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error' (*In re Celine R.* (2003) 31 Cal.4th 45, 60, citing [*People v.*] *Watson* [(1956)] 46 Cal.2d [818,] 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073; *A.R., supra*, 11 Cal.5th at p. 252).  '"""[A] 'probability' in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility."""' (*People v. Hendrix* (2022) 13 Cal.5th 933, 944, quoting *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)" (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *37–38].)

## B. Injury-focused Inquiry

In her reply brief, Mother recognizes a minimum of four different approaches for assessing prejudice, leaving the state of the law "muddled." She urges that we apply either the approach articulated by the Court of Appeal in *Benjamin M., supra*, 70 Cal.App.5th at page 744, as interpreted broadly, or what she characterizes as the "automatic reversal standard" applied by the Courts of Appeal in *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 and *In re A.R.* (2022) 77 Cal.App.5th 197, 206–207.[15] In *K.H.*, which was issued after briefing and oral argument in this case, we discussed the four general approaches identified by Mother and adopted a different, injury-focused test for prejudice, drawing on the California Supreme Court's analysis in *A.R.* (*K.H., supra*, __ Cal.App.5th at pp. __ [2022 Cal.App. Lexis 880, *46–60], citing *A.R., supra*, 11 Cal.5th at pp. 252–254.) We adhere to our analysis in *K.H.* and, in light of its discussion of the other approaches, we need not address the issue further here.

"'ICWA compliance presents a unique situation ….'" (*In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *N.G., supra*, 27 Cal.App.5th at p. 483.) As previously stated, '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' *(N.G., supra*, at p. 484, citing *In re K.R., supra*, at p. 708), and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest. However, while the appealing

---

[15] As we explained in *K.H.*, "there is a line of cases that has been characterized as holding that error with the initial inquiry is, for all practical purposes, reversible per se." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *58].) We did not join in this characterization, however, because that line of cases "involve[s] records so undeveloped that the inadequacy of the inquiry is readily apparent and there simply is no basis on which to find substantial evidence would support a contrary conclusion. Consequently, there also is no basis on which the court could exercise discretion to approve the patently inadequate inquiry and record." (*Id.* at p. __ [2022 Cal.App. Lexis 880, *59]) "We caution[ed] against characterizing these cases as generally establishing a *reversible per se* rule, though, because not all records will be as undeveloped and not all errors will be as patent as in these cases." (*Ibid.*)

party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA ([*In re*] *J.C., supra*, 77 Cal.App.5th at p. 83; accord, *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078; *In re Michael V., supra*, 3 Cal.App.5th at p. 233), and parents may raise the claim of error for the first time on appeal (*Isaiah W., supra*, 1 Cal.5th at p. 13; accord, *In re A.W.*[, *supra,*] 38 Cal.App.5th [at p.] 665; *N.G., supra*, at p. 483; *In re K.R., supra*, at p. 708)." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *38–39].)

"In *A.R.*, our high court recognized that although *Watson* sets forth the test that generally applies to the prejudice inquiry under state law (*A.R., supra*, 11 Cal.5th at p. 252), not every error is of the type that lends itself to resolution under a likelihood-of-success test (*id.* at pp. 252–253)." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *39].) "This is because in some instances, the relevant injury is not related to a specific substantive outcome on the merits and placing the measure for prejudice on such an outcome falls short of meaningfully safeguarding the rights at issue. ([*A.R., supra,*] at pp. 252–254.)" (*Id.* at p. __ [2022 Cal.App. Lexis 880, *8].)

"The claim of error in *A.R.*, like the error here, evaded a straightforward application of *Watson*. (*A.R., supra*, [11 Cal.5th] at p. 254.) Trial counsel failed to file a timely appeal on behalf of the mother following the termination of her parental rights. (*Id.* at p. 252.) On review, the agency argued that to show prejudicial error, the 'parent must demonstrate that there is a reasonable probability she would have prevailed on appeal if the notice of appeal had been timely filed.' (*Ibid.*) The court declined to apply an outcome-focused 'likelihood-of-success condition,' explaining that '[f]or a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; *it is the opportunity to appeal at all*.' (*Ibid.*, italics added.) Therefore, the 'focus [is] on whether the parent would have taken a timely appeal, without requiring the parent to shoulder the further burden of demonstrating the appeal was likely to be successful.' (*Id.* at pp. 252–253.) The court

concluded that '[w]here … a parent's failure to file a timely notice of appeal is the result of counsel's error, reinstating an otherwise-defaulted appeal is generally the only meaningful way to safeguard the statutory right to competent representation.' (*Id.* at p. 254.)

"Thus, *A.R.* recognized that while we *generally* apply a *Watson* likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not *always* appropriate because it cannot always adequately measure the relevant harm. (*A.R., supra*, 11 Cal.5th at pp. 252–253.) In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect. (*Id.* at p. 252.)

"ICWA is not directed at reaching, or protecting, a specific outcome on the merits. As we have stated, '"it typically is not self-evident whether a child is an Indian child"' (*Ricky R., supra*, 82 Cal.App.5th at p. 678, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 741), and 'the question of membership is determined by the tribes, not the courts or child protective agencies' (*T.G., supra*, 58 Cal.5th at p. 294; accord, *Rylei S., supra*, 81 Cal.App.5th at p. 321, fn. 8). 'The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."' (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) ICWA's notice requirement 'facilitate[s] a determination of whether the child is an Indian child under ICWA,' and 'ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.' (*Isaiah W., supra*, at p. 8.)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in

28.

the proceeding declines precipitously." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *41].)  Thus, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child.  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.  Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical" (*id.* at p. __ [2022 Cal.App. Lexis 880, *8–9], citing *A.R., supra*, 11 Cal.5th at pp. 252–253), and "requiring adequacy as the law directs 'is generally the only meaningfully way to safeguard the statutory right[s]' as intended under ICWA and related California law [citation].  If this step is disregarded, the protection Congress and our state Legislature intended to afford tribes goes unrealized" (*K.H., supra,* at p. __ [2022 Cal.App. Lexis 880, *42], quoting *A.R., supra*, at p. 254).

"'"[D]ependent children have a critical interest in avoiding unnecessary delays to their long-term placement"'" ([*In re*] *Christopher L., supra*, 12 Cal.5th at p. 1081, quoting *A.R., supra*, 11 Cal.5th at p. 249), and 'swift and early resolution of ICWA notice issues is ideal' (*Isaiah W., supra*, 1 Cal.5th at p. 12)." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *42].)  However, "'Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children.' (*Isaiah W., supra*, p. 13, citing *Holyfield, supra*, 490 U.S. at p. 49; accord, *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 ['[W]e are tasked with important, but competing legislative mandates.  Prejudice must be viewed through this multifaceted legislative prism.'].)  '"[T]he tribe's right to assert jurisdiction over the proceeding or to intervene in

it is meaningless if the tribe has no notice that the action is pending'" (*Isaiah W., supra*, at pp. 13–14), and the law 'recognize[s] the importance of properly determining a child's Indian status, even when a dependency proceeding has progressed beyond the initial stages' (*id.* at p. 12), and '"despite the parents' inaction"' (*id.* at p. 13).  Misplacing the relevant measure or erecting the bar too high in the context of ICWA has the effect of shielding state agencies and courts from the consequence of delinquency in complying with ICWA's basic mandates at the first step, at the expense of tribal rights and in perpetuation of the evils Congress and the Legislature identified and intended to remedy. (See [*In re*] *E.V., supra*, 80 Cal.App.5th at p. 698 ['"[T]he correct approach is to focus on the wider interest at play—i.e., the federal and state public policy of ensuring that potential Native American heritage is considered, and thus inquired about, in every dependency case."'].)" (*Id.* at p. __ [2022 Cal.App. Lexis 880, *42–43].)

While the focus in *K.H.* was a deficiency with the duty of initial inquiry (§ 224.2, subd. (b)), and the focus in this case is the failure to conduct a further inquiry (§ 224.2, subd. (e)), this distinction does not result in a different outcome.  "In the unique context of ICWA, the error claimed by [the appellant] prejudices the rights of a different stakeholder and the prejudice does not relate to a substantive outcome on the merits that may be measured by *Watson*'s likelihood-of-success test.  (*A.R., supra*, 11 Cal.5th at p. 252.)  Instead, where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard.  (*Id.* at pp. 252–254.)" (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *43–44].)  Here, Mother provided information triggering the duty of further inquiry, but the juvenile court record is silent on the matter, and even consideration of the Department's postjudgment evidence would not lessen or eliminate the error.  A finding of harmlessness on this record would necessarily require speculation and "is at odds with the statutory protections that ICWA and California law intend to

30.

afford Indian children and Indian tribes." (*Id.* at p. __ [2022 Cal.App. Lexis 880, *45].) The error is, therefore, prejudicial.

## IV. Necessity of Ensuring Adequate Inquiry on Remand

Many cases focus on the specific deficiency identified by the appellant. (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *63].) "This is understandable given the unsettled nature of the law, the amorphous nature of the inquiry, and the high stakes in a dependency case, but in determining whether an error at the initial stage of inquiry is prejudicial and requires reversal, courts must take care to assess the inquiry as a whole for adequacy. The failure to follow up on a potential lead may, in view of the entire record, prove harmless. Conversely, a more glaring error identified by the appealing parent, such as a failure to follow up on the other parent's statement indicating possible Indian ancestry, may mask other less obvious but nevertheless critical failures, such as the failure to question anyone on the appellant's side of the family other than the appellant." (*Id.* at p. __ [2022 Cal.App. Lexis 880, *63–64].)

Here, the juvenile court record reflects that the Department located and sent notices to 17 relatives of E.C. under section 309, subdivision (e). It reflects that paternal grandfather is deceased, but Mother reported three siblings, the Department had contact with I.S. (maternal aunt) regarding potential placement, and I.C. (maternal grandmother) had one visit with E.C. and was caring for one of Mother's older children. However, as stated, the juvenile court record is silent regarding what inquiries were made under ICWA, to whom they were directed, and what responses were received. (Rule 5.481(a)(5).) As in *K.H.*, "[t]he nature of this defect left the juvenile court with no evidence upon which to exercise discretion to find the [Department's] inquiry proper, adequate, and duly diligent." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *65]; see § 224.2, subd. (i)(2).)

The Department's inquiry, limited only to Mother, "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as

intended under ICWA and California law ….'" (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *65].) That Mother reported a lead relating to tribal membership through maternal great-grandmother and two maternal great-uncles, with no indication in the record that the lead was explored through further inquiry, only underscores how glaring the Department's and the court's errors are in this case.

As discussed in *K.H.*, the hybrid substantial evidence and abuse of discretion standard "reflects the need for the juvenile court to engage in a balancing of factors and to exercise sound discretion in making the relevant determinations. Not every error by an agency … will undermine the court's ICWA finding …, but the court's ability to exercise discretion in this regard is dependent on adequate record development by the agency. On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *5].) "Our high court did not express a view on second or successive appeals claiming ICWA error (*Isaiah W., supra*, 1 Cal.5th at p. 14), nor do we, but repeated appeals on this issue would be to the detriment of all and would come at an intolerably high cost to the child's interest in permanency and stability (*id.* at p. 12; accord, [*In re*] *Christopher L., supra*, 12 Cal.5th at p. 1081)." (*Id.* at p. __ [2022 Cal.App. Lexis 880, *64].) Therefore, when the matter must be remanded, as in this case, ensuring the inquiry as a whole is adequate is essential.

As in *K.H.*, "the juvenile court's finding that ICWA does not apply is conditionally reversed, and th[e] matter is remanded. On remand, the juvenile court shall direct the Department to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5)." (*K.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 880, *65].) Inasmuch as the record reflects that the Department located

relatives of E.C., the inquiry should be of sufficient reach to ensure that if there is information suggesting she is or may be an Indian child, it is gathered, and the specific lead concerning great-grandmother's and great-uncles' alleged enrollment in an Apache tribe is explored and resolved. "This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [E.C.,]" but "[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the Department. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)" (*Id.* at p. __ [2022 Cal.App. Lexis 880, *65–66].)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the Department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, its

ICWA finding shall be reinstated.  In all other respects, the court's orders terminating Mother's parental rights are affirmed.


                                                                    MEEHAN, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.